**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| **BRETT WALKER**, and all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> **UNITED AIRLINES, INC.**; **AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**; **UNITED PILOTS LONG TERM DISABILITY VEBA TRUST COMMITTEE;** and **ALIGHT SOLUTIONS** <br><br> *Defendants*. | Case No. 3:25-cv-411 |

**COMPLAINT**

This action involves claims for discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964 *et seq.*, and Texas common law, including interference with contract by the union at issue here.  Plaintiff Brett Walker, by and through his attorneys, alleges as follows:

**INTRODUCTION**

1.    This case is about an airline seeking private medical information from one of its pilots which it is not entitled to seek and to which it is not entitled under the ADA.  The employer created a work-around to obtain the information, however, by partnering with the pilot's union to create a false (and illegal) requirement to return to work from long-term disability.  The solution: have the third-party company

1

that administers long-term disability payments—a joint project between the airline and the union—make and enforce the request so that it is not coming directly from the company or the union. This conspiracy to circumvent the law violates the ADA and, because the pilot's employment was used as leverage in an illicit effort to obtain the information, is extortion and violates the federal RICO statute (along with state law) as well.

2. Plaintiff Brett Walker is a pilot with Defendant United Airlines and a member of the Defendant Air Line Pilots Association union.

3. In order to fly commercial aircraft, Captain Walker is required to possess and keep current a "First Class Medical" Certificate, issued by the Federal Aviation Administration (FAA), and signed by an Aviation Medical Examiner (AME)—who is a doctor certified and trained by the FAA to issue such authorization—indicating he is medically qualified to fly. Captain Walker is required to possess this Medical Certificate on his person any time he operates an aircraft and produce it at the request of an FAA inspector. No other medical documentation is required by the FAA or agreed to in the pilot's collective bargaining agreement (CBA).

4. In January 2024, Captain Walker was diagnosed with cancer, a medical condition that required several months of treatment. During that time, he was not qualified to have a First Class Medical Certificate and was forced to go on long-term disability (LTD), a program administered at United Airlines by both the company and union representatives—the United Pilot Long Term Disability Veba Trust

2

Administrative Committee (LTD Committee).  He was approved for LTD payments by the LTD Committee during the pendency of his treatment.

5.      Once Captain Walker's medical issue was resolved, he was able to obtain his First Class Medical Certificate—again, the only health-related FAA qualification for flying commercial aircraft.

6.      In August 2024, Captain Walker presented the company with the Certificate and sought reinstatement to flying.  The LTD Committee, however, informed him—through its agent, Defendant Alight (a third-party medical benefits provider)—that he must also provide the LTD Committee any Special Issuance correspondence between Captain Walker and the FAA containing protected health information.

7.      The FAA routinely issues directions in the form of a Special Issuance letter to the pilot or the AME directing conditions that must be met before the AME can issue the First Class Medical.  The SI letter outlines testing, reports, or other medical information that must be submitted, all of which is private protected medical information.  After the AME receives the directions and the pilot complies, the AME can issue without reservation and does so at the personal risk of the penalties contained in 14 CFR § 67, which outlines the liabilities of the certifying AME.

8.      Title I of the ADA limits an employer's ability to make disability-related inquiries—any such inquiry must be "job-related and consistent with business necessity."  *Enforcement Guidance on Disability-Related Inquiries and Medical*

*Examinations of Employees under the ADA*, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, INTRODUCTION (quoting 42 U.S.C. §§ 12112(d)(4)(A)).[1]

9.      Here, the Special Issuance letter issued to the pilot and/or AME cannot be part of a disability inquiry because it is neither job-related nor consistent with business necessity. There is no reason for the company to have the correspondence since it is a private document between the doctor and the pilot—the FAA only requires the First Class Medical Certificate, which indicates a pilot's medical fitness for duty. Moreover, when a pilot is hired with United (and thus not on LTD), they are not required to provide SI's to United. And pilots returning from LTD were never previously required to provide this correspondence until the past few years when the company began a crusade to collect private medical information from as many pilots as possible (even though the ADA forbids such inquiries).

10.      While it is obvious that United cannot make the request for the Special Issuance letter directly, it has conspired with the LTD Committee—comprised of two United management pilots and two ALPA union representative pilots—to have Alight ask for the information as a precondition of returning to work once a pilot has been on LTD.

11.      Even after presenting his First Class Medical Certificate—exactly under the terms provided in the pilot's CBA—Captain Walker has been denied reinstatement as a flying pilot. Alight has been made to continually seek the SI (in

---

[1] *Available at* https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees#N_3_.

addition to the FAA-required First Class Medical) and inform Captain Walker that he cannot be allowed to fly without providing the letter.

12.   Further underscoring the conspiracy here against Captain Walker, the LTD Committee found that he no longer qualified for LTD benefits since he could hold a First Class Medical.  The LTD Committee—whose job is only supposed to be making determinations on a pilot's qualification to receive LTD benefits under the trust—is now preventing Captain Walker from returning to flying.  This is a committee comprised of both company and union representatives, exposing the fraud being baked into the rigged system where the union is supposed to stand up for pilot rights, not work with the company to undermine them.

13.   Now, Captain Walker has had his LTD benefits taken away from him by the LTD Committee (because he does not qualify for them since he holds a First Class Medical), United will not reinstate him to flying because he will not provide the LTD Committee with a copy of his private correspondence with the FAA (medical information not required by the FAA to be disclosed and thus protected by the ADA), and ALPA will not fight for his rights since it has a vested interest in working with the company to continue the overstepping of its LTD Committee bounds (the Committee is made up of United and ALPA members).

14. But importantly, the pain can stop at any point if Captain Walker will simply acquiesce to Defendants' demands and send a copy of his SI letter to Alight. This is extortion in service of an ADA violation, and it is wrong.[2]

## PARTIES

15. Brett Walker resides in Galveston, Texas, and has worked for United Airlines as a pilot since 1997, based in Houston, Texas since 1999.

16. Defendant United Airlines is Captain Walker's employer and is a Delaware corporation with its headquarters in Chicago, Illinois, and corporate offices (including payroll for the entire company) in Houston, Texas. Moreover, the CEO of United resides in Dallas, Texas and works at the Dallas-Ft. Worth International Airport.

17. Defendant Air Line Pilots Association (ALPA) is a labor organization representing United pilots—including Captain Walker—with its principal place of business in Washington, DC. It conducts business in this District, including at the largest "hub" for United Airlines at the George Bush Intercontinental Airport (IAH), where it has one of the largest local councils.

18. Defendant the United Pilot Long Term Disability Veba Trust Administrative Committee (LTD Committee) is the Committee comprised of both United and ALPA members that administers the LTD Trust created to provide for

---

[2] While there is no private right of action under 18 U.S.C. § 241, the Defendants here are engaged in a conspiracy against rights afforded to Captain Walker by the laws of the United States and could be subject to criminal prosecution for such actions.

6

pilots on LTD.   The LTD Committee has a fiduciary duty to United pilots in administering the Trust.

19.    Defendant Alight—an agent for the LTD Committee (and thus both United and ALPA)—is an information and technology consulting company that provides third-party systems and support for human resource functions of companies (including health benefit administration) and maintains its headquarters in Chicago, Illinois, with offices in The Woodlands and Lewisville, Texas.

## JURISDICTION AND VENUE

20.    This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331, 1343, and 1367, as the Complaint arises under laws of the United States and raises federal questions.

21.    Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

22.    Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 because a substantial part of the events giving rise to this lawsuit took place within this district, including Captain Walker's employment and functional termination at IAH.   Brett Walker resides in this jurisdiction where he daily faces the decision whether or not to acquiesce to Defendants' demands that he provide them with ADA-protected information to which they are not entitled.   The Defendants do substantial business in this District—indeed, the plurality of United's business takes place out of IAH.

7

## FACTUAL ALLEGATIONS

### A.    *Background*

23.    Brett Walker began flying for United Airlines on September 27, 1997. He has received numerous awards and commendations for his exemplary service over almost three decades.

24.    As a condition of his employment, the FAA requires Captain Walker to hold a First Class Medical Certificate.  Because he is over age 40, he must be evaluated by an FAA Aviation Medical Examiner (AME) once every six months to maintain his First Class Medical.

25.    In January 2024, Captain Walker was forced to go on long-term disability leave for a medical condition.  He was diagnosed with lymphoma (cancer) at that time and thus unable to hold a First Class Medical while undergoing treatment for the disease.

26.    Once Captain Walker's cancer was treated, the FAA reissued his First Class Medical Certificate, determining that he meets the federally established requirements for flying safely as an airline pilot.  *See* Exhibit 1.

27.    As with any First Class Medical, any "limitations" on Captain Walker's ability to fly imposed by the AME would appear in the "Limitations" section on the front of his Certificate.

28.    The FAA routinely issues private correspondence between the pilot, the Agency, and the pilot's AME that mandates separate testing/requirements that the AME must meet before they issue the First Class Medical Certificate.  This letter

contains private, protected medical information.  It can also include information, for example, other than the specific disability for which Captain Walker went on LTD.

29.    The FAA does not require an SI to be disclosed to an employer.  In fact, the ADA prevents employers from asking for such information from an employee, and in 2016, the FAA discontinued the requirement for pilots to carry the letter.

**B.    United's Long-Term Disability Committee**

30.    The *United Pilots Long Term Disability Veba Trust* is a benefits plan that pays pilots who qualify for disability benefits while they are unable to fly.  The plan documents provide for oversight of the Trust by the LTD Committee.

31.    The LTD Committee is comprised of two pilot members from ALPA, two management pilot members from United, and a United Human Resources Administrator.  None of these individuals have any medical qualifications, FAA AME training, or authority to participate in the pilot certification process outlined by the FAA.

32.    As explained in Exhibit 2, the Powers and Duties of the LTD Committee consist of administering the plan's benefits, including determining if a pilot is eligible to receive trust benefits—"a Participant's entitlement to a benefit."

33.    There is no provision indicating that the LTD Committee has authority to determine authorization for return to work from LTD.

**C.    Applicable Authorities for Returning to Work from LTD**

34.    As noted above, FAA regulations state that a First Class Medical Certificate is the only medical clearance required to qualify for work as an airline

captain.  *See* 14 C.F.R. § 61.23.  Once that Certificate is issued, there is no medical restriction on the pilot flying for a commercial airliner.

35.    In line with this, the 2024 Guide for AMEs holds that those individuals (at the direction of the Federal Air Surgeon) are the *sole* determiner of a pilot's medical qualifications and ability to safely operate as a commercial airline pilot. AMEs "may issue a medical certificate only if the applicant meets all medical standards, including those pertaining to medical history unless otherwise authorized by the FAA."  *See* Exhibit 3.  The FAA further restricts any access to a pilot's medical information on a strict "need-to-know" basis.

36.    Similarly, United's Flight Operations Manual (FOM)—which is approved by the FAA—clearly states that "[t]here is no requirement for a pilot who has an Authorization for Special Issuance of Medical Certificate (Authorization) . . . to carry a copy of their authorization . . . in their physical possess."  Exhibit 4.  Until 2016, the FAA required pilots to carry their SI letters with them but that regulation was removed due to privacy concerns.  According to the FOM, the only relevance an SI may have now is that a pilot with an SI date that is more restrictive than the normal timeframe for holding a First Class Medical must verify that the more restrictive date is provided to United.  But even then, the SI itself is not required to be uploaded to United's possession.

37.    Finally, the United Pilot Agreement (UPA) is the collective bargaining agreement (CBA) between the company and ALPA.  Under the terms of the CBA, the company has three business days to return a pilot to work from LTD after receiving

a valid First Class Medical and fifteen days to place the pilot in active pay status. UPA at 12-H-4. At the same time, the pilot receiving the LTD benefits must notify the LTD Committee to inform them that the pilot will no longer qualify for the trust benefits. *Id.* at 24-H-15.

38.    Importantly, the UPA states: "Nothing in this Agreement shall be construed as a waiver of any Pilot's right(s) under any applicable laws and regulations. To the extent that any provision of this Agreement, past practice or Company policy is in conflict with applicable laws or regulations, applicable laws or regulations shall govern and shall be enforceable according to their terms . . . ." *Id.* at 21-U.

### D.    *Captain Walker's Return to Work Efforts*

39.    On August 8, 2024, the FAA issued Captain Walker's First Class Medical allowing him to work as a commercial pilot. Exhibit 1.

40.    Captain Walker then sent the copy of his Certificate to his supervisor—Chief Pilot Ernie Aller—on August 9, 2024, as required. Exhibit 1.

41.    Rather than return Captain Walker to work, however, United (through the LTD Committee) resisted on the basis that he must also submit a copy of his Special Issuance letter from the FAA to him and his AME, along with the First Class Medical Certificate. *See* Exhibit 5.

42.    The Company continued to tell Captain Walker—through its agent, Alight—that a copy of the SI letter was required for return to work. *See* Exhibit 6.

43.    Because Captain Walker resisted this intrusion into ADA-protected information, he was notified by Alight that the SI letter must be turned over to the

LTD Committee (an arm of both United and ALPA).  Indeed, Alight revealed that it had been "informed from United Airlines that all parties[—the company, the union, and the LTD Committee—]agree that to process the [return to work], a copy of your Special Issuance must be submitted."  Exhibit 7.

44.     After the company, union, and Alight pretended that such a requirement had always been in place, Captain Walker provided a note from another pilot who just earlier that year had not been asked to provide a SI letter when he returned from LTD.  Exhibit 8.  This was just one example as Captain Walker knows of others who have not been required to submit SI letters when returning to work.  Indeed, Captain Walker has never been required to provide any updated SI letters for a previous ailment in 2018.  This is evidently just a discriminatory tactic used by Defendants from time to time when needed to coerce an employee.

45.     Indeed, it is telling that United does not even ask for SI letters when pilots start work with the company—the airline knows that would be illegal under the ADA.

46.     As Captain Walker pointed out to United, there must only be illicit reasons for the company changing its rules against him (and perhaps now others similarly situated).  Exhibit 5.  Perhaps it is building an illicit database of medical information on pilots or to see which AMEs the company does not trust.  Or perhaps it is just retaliation and harassment of Captain Walker individually.  In either circumstance, the Air Line Pilots Association is complicit in interfering with Captain

Walker's right to return to work.   Discovery will reveal the motives behind Defendants' illegal actions here.

47.    In the meantime, though, the LTD Committee fulfilled its job of determining that Captain Walker was not entitled to an LTD benefit under the Trust plan and terminated his LTD benefits.  In such circumstances, because there is no qualification for LTD benefits, only the regular FAA and UPA rules should be in place for Captain Walker to return to work.

48.    Because ALPA was complicit in the discrimination (and extortion) taking place through the LTD Committee, it determined that it will continue to work with the company against pilots on this issue post-Committee, thereby interfering with Captain Walker's ability and right to return to work.  Indeed, when Captain Walker even mentioned trying to get ALPA to bring a grievance for him not being reinstated, ALPA attempted to hide behind a provision of the UPA that does not cover United's actions here.  This only highlights the union's conspiracy to work with the company to deprive pilots (or at least Captain Walker) of his ADA rights.

49.    Throughout the process, United (through Alight and with ALPA's blessing) has continued to hold Captain Walker at gunpoint, working together to withhold his paycheck when he is ready, willing, and able to fly.  This is just the use of a paycheck as leverage to force compliance with an illegal dictate—not the first time United has engaged in this sort of tactic.  *See Sambrano v. United Airlines*, 45 F.4th 877, 879 (5th Cir. 2022) (Ho, J., concurring with denial of rehearing en banc) ("Notably, United chose not to fire employees who refused the vaccine, but instead

13

put them on indefinite unpaid leave, and made clear that the only way they could return to their jobs was to be vaccinated. It did so for one simple reason: to coerce its employees into violating their religious beliefs—and what's worse, to do so irrevocably and permanently.").

50.    Captain Walker holds a current First Class Medical Certificate currently and so would be returned to work immediately if he acquiesced to Defendants' coercion and provided any/all private medical correspondence between himself, the FAA, and the AME.

51.    After the EEOC was unsuccessful in resolving this case, a Notice of Right to Sue was issued to Captain Walker on September 15, 2025.

### APPLICABLE LAW

52.    The ADA prohibits United from discriminating against employees based on disability—including in the terms, conditions, and privileges of employment. 42 U.S.C. § 12112.  This covers improper disability-related inquiries that are not necessary for any business purpose.  42 U.S.C. § 12112(d)(4)(A).

53.    Additionally, "an employer also is prohibited by the ADA from taking any action through a labor union contract that it may not take itself."  EEOC, *A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act*, § 7.11(a).

54.    And the ADA prohibits "interference" with the exercise or enjoyment of ADA rights.

55.    Federal law also provides protection through the Civil RICO statute against entities working together in a pattern of racketeering activity.  18 U.S.C.

14

§ 1962. Such activity includes extortion of property as prohibited by the Hobbs Act. 18 U.S.C. § 1951.

56. Texas law also prohibits using coercion to unlawfully obtain the money or property of another person; invasions of privacy, attempts to defraud, and interference with contractual relationships.

## CAUSES OF ACTION

### COUNT ONE:

### ADA – DISABILITY DISCRIMINATION
(42 U.S.C. § 12112)

57. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

58. An employer may not undertake a disability-related inquiry against an employee that is unnecessary for business purposes. 42 U.S.C. § 12112(d)(4)(A).

59. Here, Defendant United Airlines seeks to do through a third party what it knows it cannot do directly: obtain protected medical information through Alight and the LTD Committee under the guise of it being required for Captain Walker to return to work after being on LTD.

60. As noted above, not only is there no basis for such a request under FAA regulations, United's Flight Operations Manual, or the pilot CBA, any such request would be barred by the statute anyway.

61. In addition to the money damages incurred during Defendants' period of discrimination, Captain Walker seeks both a declaration against such conduct and

an injunction forbidding Defendants from continuing to engage in such conduct against himself and any other pilot similarly situated

62.     Accordingly, Plaintiff requests relief as hereinafter described.

## COUNT TWO:

### ADA/TITLE VII – RETALIATION
(42 U.S.C. §§ 12203(a) and 2000e-3(a))

63.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

64.     The ADA prohibits an employer from discriminating against an individual because of their participation in the exercise of their rights under the statute.  42 U.S.C. § 12203(a).

65.     Title VII also makes it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).

66.     In this case, Captain Walker is a class member of the class certified in *Sambrano v. United Airlines* under a Title VII violation.  As a result of that litigation, United Airlines is taking steps against class members across the country trying to retaliate against them for their refusal to take the COVID-19 vaccine and to prevent the full exercise of rights in that case.  Many examples abound of United taking more aggressive stances for minor employment violations or other actions that the company can arguable claim justifies discipline—if the employee is in the *Sambrano* class.  This retaliation must be ended.

67.     Accordingly, Plaintiff requests relief as hereinafter described.

## COUNT THREE:

## ADA – COERCION/INTERFERENCE
(42 U.S.C. § 12203(b))

68.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

69.     The ADA also holds it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

70.     Here, Defendants continue to coerce Captain Walker into providing the ADA-protected information sought by United Airlines.  Defendants have removed the LTD benefits to which he was entitled when he could not hold a First Class Medical Certificate and then refused to return him to work because he will not give the LTD Committee—whose job is already complete according to the Trust documents—the private medical information the company wants.

71.     ALPA is complicit in the coercion, working against Captain Walker's rights, as is the LTD Committee and Alight by continuing to seek the ADA-protected information.  This amounts to interference with Captain Walker's ADA rights under the same statute.

72.     Accordingly, Plaintiff requests relief as hereinafter described.

## COUNT FOUR:

### CIVIL RICO
(18 U.S.C. § 1962)

73.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

74.     Here, Defendants have created an enterprise for carrying out the coercion and extortion of Captain Walker's property.   United informs the LTD Committee (comprised of United and ALPA members) and/or Alight that a illegal (and extra-contractual) employment requirement can be requested before returning Captain Walker to flying.

75.     At the same time, Defendants ensure that Captain Walker goes without pay—either through the LTD benefits plan or by the terms of the UPA contract—so that his "incentive" to turn over the ADA-protected information is maximized.

76.     This is a violation of the Hobbs Act, 18 U.S.C. § 1951, which prohibits extortion of an individual's property.

77.     These actions fulfill the pattern of racketeering activity as the Defendants, on multiple occasions, illicitly inform Captain Walker of the new requirement invented out of whole cloth as either an information gathering endeavor or pure retaliation against Captain Walker—a motive question to be answered through discovery.

78.     It is believed that United has also begun seeking this information from other pilots and is engaging in the same pattern of extortion against those pilots to force their compliance.

79. Accordingly, Plaintiff requests relief as hereinafter described.

## COUNT FIVE:

### RICO CONSPIRACY
(18 U.S.C. § 1962)

80. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

81. Defendants have agreed to participate in the enterprise here that is extorting Captain Walker regarding his ADA-protected information.

82. The acts taken in furtherance of that conspiracy include informing him multiple times of the illicit new return to work requirement (that is not enforced on new hires), ALPA refusing to grieve the action United is having Alight take, and the LTD Committee—comprised of United and ALPA members—continuing to seek the protected information that falls outside of the Committee's purview.

83. The overt acts, as seen through the correspondence with Captain Walker, have included the coercion/extortion that has culminated in the removal of his livelihood.

84. Accordingly, Plaintiff requests relief as hereinafter described.

## COUNT SIX:

### STATE LAW VIOLATION
FRAUD AND CONSPIRACY TO DEFRAUD

85. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

19

86.     Texas state law not only prohibits the extortion taking place here, it also prevents Defendants from defrauding (or attempting to defraud through the conspiracy here) an individual such as Captain Walker.

87.     The LTD Committee/Alight have informed Captain Walker that he must turn over information (at the behest of the company) and the union has agreed to go along with this blatant violation of ADA rights.

88.     The fraud here forces Captain Walker to choose either between his medical privacy rights or his paycheck—either way, he is defrauded out of something.

89.     Accordingly, Plaintiff requests relief as hereinafter described.

**COUNT SEVEN:**

**STATE LAW VIOLATION**
INVASION OF PRIVACY

90.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

91.     Texas law prohibits the invasion of anyone's privacy by another.

92.     This is especially true of sensitive medical information, such as that contained in the private correspondence between the FAA medical examiner here and Captain Walker.

93.     Defendants are seeking to intrude into private affairs that are not necessary in the employment context here as it exceeds the FAA's own regulations to require more than a First Class Medical.

94.    Being forced to provide such information would be extremely invasive to Captain Walker and it creates emotion distress for him to be put to the coercive choice here of divulging the private correspondence with his AME or losing his livelihood.

95.    Accordingly, Plaintiff requests relief as hereinafter described.

## COUNT EIGHT:

### STATE LAW VIOLATION
INTERFERENCE

96.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

97.    In this case, ALPA and Alight (along with the LTD Committee) are interfering with the contractual relationship between Captain Walker and United Airlines, in violation of Texas state law.

98.    While it may be at United's behest, the other Defendants are doing the bidding of United to obtain the private and protected medical information to which United is not entitled.

99.    Indeed, United knows it cannot ask employees for this information which is why it does not do so for newly hired pilots.  It is only through this "loophole" the company believes it has found in the LTD Committee's processing of return-to-work paperwork that it thinks the ADA-protected information becomes available to the company.

100.    To the extent that the LTD Committee, ALPA, and Alight are aiding and abetting this effort of United to get around its straightforward duty to return Captain Walker to work, those Defendants are interfering with his contractual right to fly.

21

101.  Accordingly, Plaintiff requests relief as hereinafter described.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant, awarding relief as follows:

(i)  Declare Defendants have violated the ADA by seeking protected information unnecessary for business purposes against Captain Walker and all those similarly situated;

(ii)  Declare that Defendants have violated Title VII/ADA by retaliating against Captain Walker for engaging in protected activity through the *Sambrano* case;

(iii)  Declare that Defendants have violated the ADA by coercing Captain Walker (and all those similarly situated) to forfeit the right of privacy to which he is entitled under the ADA;

(iv)  Declare that Defendants have violated Civil RICO by coercing Captain Walker (and all those similarly situated) to forfeit the right of privacy to which he is entitled under the ADA and extorting him out of his livelihood for the past year and a half in the concerted effort to obtain the information United wants;

(v)  Declare that Defendants have violated state law protecting the contractual and privacy rights of Captain Walker, as well as his right not to be defrauded in his workplace;

(vi)    Enjoin Defendants from attempting to force the forfeiture of ADA rights (such as those set forth here) by making it a condition of employment as they have done against Captain Walker and all those similarly situated;

(vii)   Award damages, including back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices;

(viii)  Award damages necessary to make Captain Walker (and all those similarly situated) whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial;

(ix)    Award reasonable attorneys' fees and costs;

(x)     Award treble damages according to the Civil RICO statute; and

(xi)    Grant any other relief that the Court deems just and proper;

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all counts so triable.

December 14, 2025

Respectfully submitted.

/s/ *John C. Sullivan*
John C. Sullivan
Attorney-in-Charge
Texas Bar No. 24083920
Jace R. Yarbrough*
Texas Bar No. 24110560
**S | L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Phone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com
jace.yarbrough@the-sl-lawfirm.com

*Attorneys for Plaintiff*